John DOE, Alias

v.

**BLUE CROSS & BLUE SHIELD OF RHODE ISLAND.**

Civ. A. No. 91–0492–P.

United States District Court,
D. Rhode Island.

July 6, 1992.

Elizabeth A. Del Padre, Providence, R.I., for plaintiff.

Matthew F. Medeiros, Genevieve M. Domenico, Flanders & Medeiros, Providence, R.I., for defendant.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

Defendant in the above-captioned case has filed a Motion to Strike Plaintiff's Amended Complaint. In essence, defendant objects to plaintiff's use of a fictitious name in his Complaint. For reasons which follow, the Court denies defendant's motion, and authorizes plaintiff to proceed in this matter under a fictitious name.

### I.

Plaintiff, a transsexual, has filed suit against Blue Cross & Blue Shield of Rhode Island ("Blue Cross") in an attempt to recoup medical expenses he incurred in connection with his sex change. Blue Cross contends that sex changes are expressly excluded from the insurance coverage afforded plaintiff through his group employee benefits plan.

Plaintiff wishes to pursue this litigation under a fictitious name

in order to avoid public identification as a transsexual. Plaintiff seeks to avoid the social stigmatization which would flow from his identity as a transsexual. Plaintiff also seeks, through the use of a fictitious name, to protect his privacy, as well as to insulate himself from harassment that could result from his public identification as a transsexual. And plaintiff seeks to avoid the destruction of his ability to earn a living. Indeed Plaintiff, an insurance agent, lost the endorsement of two insurance carriers after they had learned that he was a transsexual. As a result, Plaintiff fears that other carriers would refuse to conduct business with him, and that his ability to pursue his chosen occupation, or any other, would be jeopardized by public revelation of his transsexuality.

Plaintiff's Memorandum at 1. Defendant counters that neither "social embarrassment [nor] potential economic loss ... is sufficient to overcome the presumption that one who seeks the assistance of the courts should conduct that litigation under his/her own name." Defendant's Reply Memorandum at 2.

### II.

Few courts have been faced with the precise question of whether transsexuals are entitled to sue under pseudonymous

names.[1] However, in at least three such cases, transsexual litigants were permitted to proceed under fictitious names. In *McClure v. Harris*, 503 F.Supp. 409 (N.D.Cal.1980), *rev'd on other grounds*, *Schweiker v. McClure*, 456 U.S. 188, 102 S.Ct. 1665, 72 L.Ed.2d 1 (1982), the Court granted plaintiff Ann Doe's motion to proceed by a fictitious name. Ms. Doe's lawsuit was premised on a denial of Medicare reimbursement for her sex-change operation. The Court in *Doe v. McConn*, 489 F.Supp. 76, 77 (S.D.Texas 1980), explained that "The Jane Doe Plaintiffs and Plaintiff M.B., in various stages of sexual transition, are suing under fictitious names to insulate themselves from possible harassment, to protect their privacy, and to protect themselves from prosecution resulting from this action."[2] Finally, in *Doe v. Alexander*, 510 F.Supp. 900 (D.Minn.1981), the Court, without comment, permitted the transsexual plaintiff to litigate pseudonymously.

These cases assure me that my instinctive reaction to defendant's motion is devoid of neither legal precedent nor merit; other courts have held that transsexuals seeking to protect their rights through the judicial process are not required to divulge their identities. In balancing plaintiff's right to privacy and security against the dual concerns of (1) public interest in identification of the litigants; and (2) harm to the defendant stemming from falsification of plaintiff's name,[3] this Court is cognizant of the highly sensitive and personal nature of each person's sexuality. Particularly in this era of seemingly increased societal intolerance toward "unconventional" sexual

behavior, I will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure.

In assessing the potential harm to plaintiff if he is forced to reveal his identity, a useful analogy may be drawn to homosexuals and others whose sexuality also expose them to public derision and discrimination. This analogy was acknowledged in Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants be Permitted to Keep Their Identities Confidential?*, 37 Hastings L.J. 1, 51 (1985), a scholarly article on the subject of pseudonymous litigants:

> [P]eople may have a right not to disclose their sexual histories and preferences, and a strong interest in nondisclosure. Matters of sexual identity and sexual preference are exceedingly personal.... [W]hile sex-change operations are too new to carry a long history of condemnation and stigma, the experience of homosexuals and transvestites strongly indicates a similar public response.

I need cite no authority for the proposition that homosexuals in the United States today are frequently met with scorn or hatred. While transsexuality and homosexuality are not the same or even related phenomena, bigoted persons are no more likely to tolerate one than the other of these sexual practices.

Homosexual plaintiffs have been permitted to litigate their cases pseudonymously to protect their privacy and to shield them from social stigmatization. In *Doe v. United Services Life Ins. Co.*, 123 F.R.D. 437 (S.D.N.Y.1988), a heterosexual male sued a

---

1. Under most circumstances, parties to a lawsuit are required to proceed under their real names. *See, e.g.,* Fed.R.Civ.P. 10(a); *Southern Methodist Univ. Ass'n. v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir.1979). This general rule has been broken on occasion, however. *See Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D.Mont.1974). The present dispute focuses on whether plaintiff's circumstances warrant such a departure from the general rule.

2. Blue Cross correctly points out *McConn* is distinguishable from the instant case in that the plaintiff transsexuals in *McConn* were in danger

of prosecution for violating a city ordinance making it unlawful for persons to cross-dress in public. *See* Defendant's Reply Memorandum at 4. Here, the plaintiff faces no such threat of criminal sanctions; nonetheless, the *McConn* plaintiffs and the present plaintiff share other, equally valid, concerns regarding divulgence of their true identities.

3. "The decision [as to whether a party may sue anonymously] requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.1981).

life insurance carrier which erroneously classified him as homosexual based on certain aspects of his lifestyle, and then attempted to add a surcharge to his premium on the basis of its inaccurate categorization. In permitting plaintiff to litigate under a fictitious name, the Court reasoned that "[c]ases where a party risks identification as a homosexual ... raise privacy concerns that have supported an exception to the general rule of disclosure [of the litigant's name]." *Id.* at 439. Cautioning that "[c]ourts should not permit parties to proceed pseudonymously just to protect the parties' professional or economic life," the Court granted plaintiff's motion to litigate pseudonymously. *Id.*

I find persuasive the analysis of litigants' requests for pseudonymity set forth in *Doe v. Rostker*, 89 F.R.D. 158 (N.D.Cal. 1981). The Court explained that the general rule requiring plaintiffs to include the names of all parties in their complaints is not set in stone:

> Courts have carved out limited exceptions to [this rule] where the parties have strong interests in proceeding anonymously. Although no express standard exists setting forth these exceptions, this court's review of numerous cases has uncovered some classifiable characteristics. The most common instances are cases involving abortion, mental illness, personal safety, homosexuality, transsexuality and illegitimate or abandoned children in welfare cases. The common thread running through these cases is the presence of some social stigma or the threat of physical harm to the plaintiffs attaching to disclosure of their identities to the public record.

*Id.* at 161 (citations omitted). The Court continued:

> A plaintiff should be permitted to proceed anonymously in cases where a substantial privacy interest is involved. The most compelling situations involve matters which are highly sensitive, such as social stigmatization, real danger of physical harm, or where the injury litigated against would occur as a result of the disclosure of the plaintiff's identity. That the plaintiff may suffer some embarrassment or economic harm is not enough. There must be a strong social interest in concealing the identity of the plaintiff.

*Id.* at 162.

The plaintiff in this case does have a substantial privacy interest at stake. Unquestionably, one's sexual practices are among the most intimate parts of one's life. When those sexual practices fall outside the realm of "conventional" practices which are generally accepted without controversy, ridicule or derision, that interest is enhanced exponentially. As a transsexual, plaintiff's privacy interest is both precious and fragile, and this Court will not cavalierly permit its invasion.

### III.

Defendant contends that other factors outweigh plaintiff's privacy interest in keeping his identity from the public at large. First, defendant attempts to analogize between the instant case and *John Doe and Jane Doe v. Prudential Insurance Co.*, 744 F.Supp. 40 (D.R.I.1990). The underlying dispute in *Prudential* involved a claim by the parents of a deceased homosexual for the proceeds of the decedent's life insurance policy. The parents filed a motion to proceed under fictitious names, presumably because they did not wish to publicize their son's homosexuality or the fact that he died from AIDS. The Court denied plaintiffs' motion, explaining that:

> [P]laintiffs ... rely on an understandable desire to prevent what they consider to be "personal, private, and family matters" from becoming public information.... However, it is inappropriate for the Court to bar access to otherwise public records solely on the basis of subjective feelings of confidentiality or embarrassment of the type asserted here.

*Id.* 744 F.Supp. at 41.

*Prudential* is easily and appropriately distinguished from the case at bar. In *Prudential*, the individual whose sexual preferences and practices were to be exposed in the course of litigation was dead. He would, therefore, suffer no stigmatiza-

tion following disclosure of his identity. While the individual's parents did have a privacy interest at stake, due to its largely vicarious nature, their interest was insufficient to outweigh public interest in disclosure. In the instant case, the plaintiff seeks to mask his identity; it is *his* sexuality which will become public knowledge unless he proceeds under a fictitious name. He may suffer stigmatization for the duration of his life if his identity is disclosed. Thus, the privacy interest he asserts is vastly greater than that of the plaintiffs in *Prudential.* Moreover, as detailed in the previous Section, this Court finds that plaintiff's interests in nondisclosure are more than "mere embarrassment or threat of economic harm,"[4] as described by defendant. *See* Defendant's Reply Memorandum at 2.

> Defendant also argues that it
> seriously doubts that this case will need to reach the issue of the "medical necessity" of plaintiff's surgery, which, according to plaintiff, purportedly would bring into minute scrutiny the details of his treatment. Blue Cross' primary defense in this case is that the treatment for which reimbursement is sought is unambiguously and categorically excluded from coverage under plaintiff's subscriber agreement.... In view of this clear and unambiguous contract exclusion, Blue Cross submits that it is likely to prevail on a motion for summary judgment. Medical testimony may never be required in this case.

Defendant's Reply Memorandum at 7. This argument essentially asks this Court to engage in unwarranted speculation. Defendant has thus far not filed a summary judgment motion, and I will not join with defendant in hypothesizing that it would indeed prevail on a summary judgment motion which does not now even exist. Plaintiff presently has a substantial privacy interest at stake, which must be protected from the start of litigation if it is to be worth anything at all. Defendant's predic-

tion that it will prevail at the summary judgment phase has no bearing on this Court's balancing of plaintiff's interests against those of the public.

Defendant's additional arguments in support its motion to strike plaintiff's amended complaint do not merit further comment from the Court. I find that plaintiff has a substantial privacy interest in maintaining confidentiality as to his identity; I further find little if any evidence that the public interest in disclosure is sufficient to override plaintiff's security interest. Nor do I find that any significant harm will befall defendant if plaintiff proceeds under a fictitious name. Accordingly, I authorize the plaintiff to pursue this litigation using a pseudonym, and I deny defendant's motion to strike the amended complaint.

SO ORDERED.

---

**4.** Plaintiff argues that he has already, and will likely continue to, lose professional clients once his status as a transsexual is no longer confidential. The Court need not address this, since I find that the probability of social stigmatization is sufficient to override any public interest in identity disclosure in this case.