**John DOE, Plaintiff,**

v.

**INDIANA BLACK EXPO, INC., an Indiana Corporation, et al., Defendants.**

**No. IP 96–0468–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

April 17, 1996.

138

Howard N. Bernstein, Indianapolis, Indiana, for plaintiff.

### ENTRY ON PLAINTIFF'S MOTION TO PROCEED UNDER FICTITIOUS NAME

HAMILTON, District Judge.

This case presents the question whether a plaintiff alleging employment discrimination and related claims against private parties may proceed in the litigation under a false name. The plaintiff filed this action on April 8, 1996. His complaint does not state his real name but uses the false name of John Doe. Plaintiff filed with his complaint a motion seeking to proceed under the name John Doe, to seal all documents containing his actual name, and to restrain defendants from disclosing his real name. Plaintiff also filed "under seal" a notice that stated his real name and included copies of his EEOC charge and right to sue letter, which also reflect his real name. As explained below, plaintiff has failed to overcome the strong presumption in favor of requiring litigants' names to be a matter of public record. His request to proceed under a fictitious name is therefore denied.

■ Rule 10 of the Federal Rules of Civil Procedure provides that the title of the action in the complaint "shall include the names of all the parties...." Federal Rule of Civil Procedure 17 requires that all civil actions be prosecuted in the name of the real party in interest. These requirements are not a matter of mere administrative convenience for court staff and counsel. They also protect the public's legitimate interest in knowing which disputes involving which parties are before the federal courts that are supported with tax payments and that exist ultimately to serve the American public. See *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir.1992) ("Lawsuits are public events."); *Doe v. Rostker*, 89 F.R.D. 158, 160 (N.D.Cal.1981) (Rule 10(a) protects "public's legitimate interest in knowing all the facts and events surrounding court proceedings."); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D.Mont.1974). See generally *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 & n. 17, 100 S.Ct. 2814, 2829 & n. 17, 65 L.Ed.2d 973 (1980) (holding public has First Amendment right to attend criminal trial, but not deciding right to attend civil trials).

■ Notwithstanding the powerful presumption in favor of open proceedings where the parties are identified, the federal courts of appeal and a number of district courts have recognized that a district court may have the discretion to permit a party to proceed under a fictitious name. This unusual practice has been permitted in exceptional cases where the party has a privacy right so substantial as to outweigh the "customary and constitutionally-embedded presumption of openness in judicial proceedings." *Frank*, 951 F.2d at 323, quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir.1981). See, *e.g.*, *James v. Jacobson*, 6 F.3d 233, 238–39 (4th Cir.1993); *Coe v. United States Dist. Ct. for the Dist. of Colo.*, 676 F.2d 411, 418 (10th Cir.1982); *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir.1979); *Doe v. Shakur*, 164 F.R.D. 359, 360 (S.D.N.Y.1996); *Doe v. Bell Atlantic Business Sys. Servs., Inc.*, 162 F.R.D. 418, 420 (D.Mass.1995). The Supreme Court appears not to have ruled specifically on the practice or its compatibility with Fed.R.Civ.P. 10, but it has implicitly permitted the use of fictitious names in a number of cases. *E.g., Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Doe v. Bolton*, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). All courts recognize, however, that proceeding under a fictitious name is an unusual measure reserved for exceptional cases.

■ There is no simple formula for determining when this unusual procedure is appropriate. Many of the cases in which courts have allowed plaintiffs to proceed under fictitious names have involved challenges to governmental activity where prosecution of the suit would also require plaintiffs to disclose information of the utmost intimacy, and where the asserted claims included disclosure of an intention to engage in illegal conduct, thereby exposing plaintiffs to the risk of criminal prosecution or other adverse governmental action. See *Stegall*, 653 F.2d at 185. Courts often allow plaintiffs to proceed under fictitious names where the interests of children are at stake. For example, if litigation involves facts about a child's medical condition or disability, such as cases under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*, use of fictitious names or initials may be permitted. In *Doe v. Rostker*, the court noted that cases where fictitious names have been permitted most commonly involved claims concerning abortion, mental illness, personal safety, homosexuality, transsexuality, and children. 89 F.R.D. at 161. A few cases have also allowed use of false names where use of the plaintiff's true name would result in precisely the harm the lawsuit seeks to prevent, such as disclosure of certain information. See, *e.g., Roe v. Ingraham*, 364 F.Supp. 536, 541 n. 7 (S.D.N.Y.1973) (privacy challenge to statute requiring disclosure of identities of patients receiving certain prescription drugs). Although the unusual practice is seen most often in litigation against a governmental officer or entity, plaintiffs have been permitted to proceed under fictitious names in a few cases against private parties, including, for example, challenges to the practices of private insurance companies and cases where significant privacy interests of children were prominent. See *e.g., Doe v. Blue Cross &*

*Blue Shield of Rhode Island,* 794 F.Supp. 72 (D.R.I.1992) (insurance coverage dispute concerning insurer's refusal to pay for medical costs of sex change operation); *Doe v. United Servs. Life Ins. Co.,* 123 F.R.D. 437, 439 (S.D.N.Y.1988) (challenge to insurer's alleged reliance on sex, marital status, and sexual orientation in processing life insurance applications); *Jacobson,* 6 F.3d at 238–39 (biological paternity at issue in medical malpractice action against doctor who had been convicted of criminal fraud for using his own sperm instead of donors' sperm to impregnate patients); *Roe v. Borup,* 500 F.Supp. 127, 130 (E.D.Wis.1980) (allegations of sexual abuse of children).

 Courts dealing with requests to proceed under fictitious names have avoided trying to articulate any mechanical legal test. They have instead identified a number of factors that should be considered to determine whether a plaintiff's interest in privacy is so significant as to outweigh the strong presumption favoring public identification of litigants. In *Doe v. Shakur,* for example, the court identified as factors:

> (1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; and (5) whether the party defending against a suit brought under a pseudonym would be prejudiced.

164 F.R.D. at 361. Other factors may include whether the interests of children are at stake, *e.g., Doe v. Stegall,* 653 F.2d at 186, and whether there are less drastic means of protecting legitimate interests of either the party seeking anonymity or the opposing party, see *Jacobson,* 6 F.3d at 241. As the Eleventh Circuit has instructed, a judge presented with a request to proceed under a fictitious name should carefully review all the circumstances of the given case and then decide "whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank,*

951 F.2d at 323. Against the backdrop of the presumption in favor of public disclosure, therefore, the court will review and then evaluate the nature of plaintiff's claims, his asserted need for privacy, and the defendants' interests in public disclosure of the plaintiff's name.

**Plaintiff's Claims:** The plaintiff alleges that he was employed by Black Expo, Inc., was subjected to unlawful harassment, and ultimately was fired unlawfully. He alleges in Counts One and Two that his employer violated the Americans with Disabilities Act and a parallel Indiana law in several ways, including creating a "stressful and abusive work environment" that caused stress aggravating plaintiff's "stress related problems," and firing him for taking time off to receive mental health treatment. Count Three alleges a violation of Title VII of the Civil Rights Act of 1964, but does not specify the grounds for the alleged discrimination. Count Four alleges sexual harassment in violation of Title VII of the federal Civil Rights Act of 1964 and a parallel Indiana law. Count Five alleges negligent misrepresentation in communicating to plaintiff the terms of his insurance coverage. Count Six alleges intentional infliction of emotional harm, and Count Seven alleges negligent infliction of emotional harm. Count Eight alleges defamation, and Count Nine alleges invasion of privacy. Count Ten alleges breach of an implied covenant of good faith and fair dealing. Count Eleven asserts breach of a written contract. Count Twelve alleges in very conclusory terms that one defendant has violated federal racketeering law and Indiana's corrupt business influence law. See 18 U.S.C. § 1961 *et seq.;* Ind.Code §§ 34–4–30.5–5(b), 35–45–6–2.

**Asserted Grounds for Plaintiff's Motion:** The plaintiff asserts that he has a history of substance abuse and mental health hospitalization, although he says he currently "is on a successful recovery status." Litigation of his claims on their merits will require detailed consideration of his medical history and condition. As grounds for proceeding under a fictitious name, plaintiff asserts that he is currently able to maintain substantial employment and other business interests. He asserts that his current employment and

other business interests would be adversely affected if his medical history were known by those with whom he has "current business and personal interests." He also says he is concerned that credit reporting agencies may obtain information about him from the lawsuit that could raise his health insurance premiums.

**Defendants' Interests:** This case has not yet reached the point where defendants must have responded to the complaint. Even in the absence of defendants' responsive pleadings, however, their interests concerning the identity issue are clear. The plaintiff has made serious public accusations against them. He has not made any effort to conceal the identities of the defendants. Instead, he has chosen to make these accusations anonymously in a public forum where he faces little risk of civil liability for making such accusations.[1] The plaintiff further seeks an order that would prohibit the defendants from using his real name in defending themselves publicly against his public accusations. The defendants know the plaintiff's identity, but the anonymity plaintiff seeks would significantly hamper their ability to defend themselves from adverse publicity and other collateral, but often inevitable, effects of civil litigation.

As courts have recognized, the mere filing of a civil lawsuit can have significant effects on a defendant. *E.g., Southern Methodist Univ. Ass'n,* 599 F.2d at 713; accord, *Frank,* 951 F.2d at 323–24; *Shakur,* 164 F.R.D. at 361 n. 1. The public charges made in a civil lawsuit can cast a shadow over a defendant's reputation until the case is resolved. The effects can be felt with lenders or employers, both actual and prospective. With defendants like the Black Expo, the effects could extend to prospective donors and sponsors, and to other persons or institutions invited to associate themselves publicly with the organization. A civil lawsuit can also lead to adverse publicity and can require defendants to disclose publicly certain information that they might prefer to keep private. But only rarely can a defendant in a lawsuit remain anonymous, and certainly not where the plaintiff has chosen to file publicly a complaint naming the defendants but using a false name for himself. Cf. *Doe v. A Corp.,* 709 F.2d 1043, 1044 n. 1 (5th Cir.1983) (district court sealed record and identity of parties to prevent disclosure of privileged attorney-client matters).

■ Upon weighing the nature of the plaintiff's claims, his asserted privacy needs, and the defendants' interests, it is clear that allowing this plaintiff to proceed under a fictitious name in this case would not be fair or appropriate. The reasons for adhering to the customary practice of identifying the parties are powerful in this case.

To begin with, these are private claims, primarily for damages, that the plaintiff himself has chosen to bring to this court. Unlike, for example, the victim in a criminal case, he has not been caught up unwillingly in litigation in public courts but has instead chosen to initiate this action. Nor does plaintiff claim that he is an unwilling victim of unlawful action by a government. The fact that these are damages claims against private parties is not necessarily decisive in and of itself, but it takes this case outside the categories of cases in which courts have most often been willing to allow use of fictitious names.

Most important for this court's analysis of plaintiff's request to proceed under a fictitious name is the nature of the specific claims he is making against the defendants. His claims directly accuse the defendants of several forms of serious and deliberate wrongdoing. He attacks the defendants' integrity and reputations. Basic fairness requires that where a plaintiff makes such accusations publicly, he should stand behind those accu-

---

1. See *Chrysler Motors Corp. v. Graham,* 631 N.E.2d 7, 9 (Ind.App.1994) (Indiana defamation law affords "absolute privilege" for statements made in course of judicial proceedings so long as statements are relevant and pertinent to the proceedings); *Chacharis v. Fadell,* 438 N.E.2d 1032, 1033 (Ind.App.1982) (under Indiana defamation law, statements contained in judicial proceedings are privileged if they are pertinent or relevant to litigation). The Indiana courts appear not to have decided expressly whether this privilege extends to statements made anonymously in court documents without prior court permission, a practice that could be used to take unfair advantage of the privilege.

sations, and the defendants should be able to defend themselves publicly. See *Frank,* 951 F.2d at 323–24; *Southern Methodist Univ. Ass'n,* 599 F.2d at 712–13; *Shakur,* 164 F.R.D. at 361; *Bell Atlantic,* 162 F.R.D. at 422. The plaintiff has raised claims in which the parties' testimony is virtually certain to be at odds on material matters, so that their credibility will be directly at issue. The defendants in such a case have a powerful interest in being able to respond publicly to defend their reputations, not only in court but also in other situations where the claims in the lawsuit may be of interest to those with whom the defendants have business or other dealings. Part of that defense will ordinarily include direct challenges to the plaintiff's credibility, which may well be affected by the facts plaintiff prefers to keep secret here: his history of mental health problems and his history of substance abuse. Those may be sensitive subjects, but they are at the heart of plaintiff's credibility in making the serious accusations he has made here. He cannot use his privacy interests as a shelter from which he can safely hurl these accusations without subjecting himself to public scrutiny, even if that public scrutiny includes scorn and criticism.

By contrast, many of the cases in which courts have allowed plaintiffs to proceed under fictitious names have involved claims that did not include direct and personal attacks upon the reputation and integrity of the defendants, and where personal credibility played little if any role in the issues in the case. In challenges to statutes and regulations affecting, for example, abortion or birth control, or the plaintiffs' challenge to school prayer practices in *Doe v. Stegall,* the anonymous plaintiffs were merely a few of many potential plaintiffs who could have challenged the constitutionality of the defendants' statutes or practices. There were no significant issues in which the plaintiffs' personal credibility played an important role. The constitutional claims asserted raised no personal challenge to the defendants' integrity or reputations.[2]

The plaintiff's asserted needs for proceeding under a fictitious name are understandable but are not sufficient to overcome the strong presumption in favor of requiring parties to sue using their true names. There is no issue here of physical safety or retaliation. Cf. *Stegall,* 653 F.2d at 182 n. 6 (plaintiffs offered some evidence of possible physical harm and retaliation against persons who might challenge constitutionality of public school prayers); *Shakur,* 164 F.R.D. at 362 (plaintiff's general assertion that she had been subjected to death threats did not warrant use of pseudonym; those who presumably would have any animosity toward plaintiff already knew her true identity). Plaintiff's concerns in this case are centered upon his economic well-being and possible embarrassment or humiliation, but courts have generally rejected attempts to proceed under fictitious names based solely on such concerns. See *Bell Atlantic,* 162 F.R.D. at 420; *Deschamps,* 64 F.R.D. at 652, 653 (three-judge court) (allowing pregnant woman to use pseudonym in lawsuit challenging abortion law, but requiring physician to sue in his own name).

The concerns this plaintiff has raised are concerns that could be raised by plaintiffs in many employment discrimination cases, including many asserting claims for discrimination based upon disabilities. This court's conclusion that this plaintiff should not be permitted to assert these claims under a fictitious name is consistent with decisions of other courts considering employment discrimination and other similar claims. See, e.g., *Frank,* 951 F.2d at 323–24 (plaintiff could not proceed anonymously in Rehabilita-

---

**2.** Although a few cases against private defendants have proceeded with anonymous plaintiffs, most of those cases seem to involve similar sorts of challenges to policies and procedures of broad application, where the plaintiff's personal credibility was not seriously at issue and where the claims did not amount to a direct attack on any individual's integrity or reputation. See, *e.g., Doe v. Blue Cross & Blue Shield of Rhode Island,* 794 F.Supp. 72, 75 (D.R.I.1992) (transsexual could sue anonymously for insurance benefits for sex change operation; issue was interpretation of insurance policy); *Doe v. United Servs. Life Ins. Co.,* 123 F.R.D. 437, 439 (S.D.N.Y.1988) (allowing use of false name in suit claiming that insurer's underwriting policies violated insurance laws and discriminated on basis of sex, marital status, and sexual orientation; false name would not put defendant at any disadvantage).

tion Act case alleging disability based on alcohol abuse); *Southern Methodist Univ. Ass'n*, 599 F.2d at 712–13 (female law students could not proceed anonymously in Title VII action alleging sex discrimination in hiring associates and summer clerks); *Shakur*, 164 F.R.D. at 361 (victim of sexual assault could not proceed anonymously in action for damages); *Bell Atlantic*, 162 F.R.D. at 422 (plaintiff could not proceed anonymously in Title VII and state law action for sexual harassment); *Doe v. Hallock*, 119 F.R.D. 640, 644 (S.D.Miss.1987) (same).

Although it is not an independent reason for rejecting plaintiff's request to proceed under a fictitious name, it is relevant that plaintiff has named in his complaint the members of the personnel committee, the executive committee, and the board of directors of Indiana Black Expo, Inc. These bodies are listed in the complaint as having eight, fourteen, and twenty-one members, respectively, with some overlap among their membership. In his motion, plaintiff asks for an order to restrain "all parties to this litigation" from "revealing Plaintiff's actual name to persons other than those actually directly connected with this litigation." This standard appears to be quite impractical, especially in view of the number of persons involved in this litigation on the defense side, and the long history of controversy described in the complaint.

■ Because plaintiff has failed to overcome the strong presumption against proceeding by fictitious name, plaintiff's motion to proceed under a fictitious name and for related relief is hereby DENIED. That decision raises the question how to proceed from here. At least two circuits have held that orders denying leave to proceed under a fictitious name are immediately appealable as collateral orders. *E.g., Jacobson*, 6 F.3d at 237 (4th Cir.) *Stegall*, 653 F.2d at 183 (5th Cir.). See also *Frank*, 951 F.2d at 322 n. 1 (issue certified for interlocutory appeal); *United States Dist. Ct.*, 676 F.2d at 413 (denying writ of mandamus). By filing the complaint publicly, without first obtaining an order protecting the confidentiality he seeks, plaintiff has made this problem more difficult than it needed to be. To protect the plain-

tiff's ability to pursue such relief, the court therefore ORDERS the entire record in this case sealed, including the complaint with its still anonymous allegations against the defendants, for a brief period of seven days, ending at noon on Wednesday, April 24, 1996. At that time, if no further action is taken by this court or the Court of Appeals, the entire record in this action will be unsealed, including the documents identifying the plaintiff. The court is sealing the entire record for this brief period because, if the court is correct in its disposition of this question, plaintiff's allegations against the defendants should not be a matter of public record unless he is willing to make the allegations publicly. Thus far, no defendant has complained to the court about this action by the plaintiff, nor is there any indication that plaintiff's allegations have received any public attention at this point. Accordingly, sealing the entire record for a brief time may serve to protect both the defendants' legitimate interests in having any such allegations made against them publicly, if at all, and plaintiff's right to seek appellate review of this disposition of his motion to proceed under a fictitious name.

■ Finally, in view of the court's disposition of plaintiff's request to proceed under a fictitious name, it is clear that plaintiff's original complaint using a false name fails to comply with Fed.R.Civ.P. 10(a) and is subject to dismissal. This dismissal must be without prejudice and with leave to amend. *E.g., Rostker*, 89 F.R.D. at 163. Accordingly, absent further action by this court or the Court of Appeals, plaintiff's complaint (but not the entire action) will be dismissed without prejudice effective April 24, 1996. Defendants need not respond to the original pseudonymous complaint. However, proper service of process with a complaint in plaintiff's true name shall trigger the defendants' obligation to respond. Plaintiff is hereby directed to serve copies of this entry on defendants immediately.

So ordered.