

I N T H E

# Court of Appeals of Indiana

Jane Doe,

*Appellant-Plaintiff*

v.

Kristan Reibel,

*Appellee-Defendant*



FILED

Jan 16 2026, 8:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

Jane Doe,

*Appellant-Plaintiff*

v.

Kristan Reibel, Beauty + Grace Carmel, LLC, and Amber Stanley,

*Appellees-Defendants*

---

January 16, 2026

Interlocutory Appeal from the Hamilton Superior Court

The Honorable Jonathan M. Brown, Judge

Trial Court Cause Nos.
29D02-2406-CT-006374
29D02-2406-CT-007217

---

**Opinion by Judge Felix**
Judges Foley and Scheele concur.

**Felix, Judge.**

## Statement of the Case

Two women—both using the pseudonym "Jane Doe" (collectively, the "Does")—individually sued Kristan Reibel for negligence based on his alleged violations of their privacy as well as alleged sexual, emotional, and psychological abuse. Reibel filed motions to strike both complaints for failing to name the plaintiffs therein, so the Does filed motions to proceed anonymously. After a hearing, the trial court granted Reibel's motions to strike and denied the Does' motions. The Does now bring this interlocutory appeal and present two issues for our review:

1. Whether the trial court clearly erred by denying the Does' motions to proceed pseudonymously; and
2. Whether the trial court clearly erred by granting Reibel's motions to strike.

We affirm.

## Facts and Procedural History

[3] This case arises from two separate negligence lawsuits against Reibel—the first filed in Cause 29D02-2406-CT-006374 by a Jane Doe ("Doe 6374"), and the second filed in Cause 29D02-2406-CT-007217 by another Jane Doe ("Doe 7217"). Prior to the Does filing their lawsuits, the State charged Reibel with two counts of voyeurism—one count for his conduct involving Doe 6374 in June 2022 and one count for his conduct involving Doe 7217 in April 2021.[1] Doe 6374 was identified as "Victim 1" in the publicly available charging information and probable cause affidavit, Appellants' App. Vol. II at 61, 63–67, 70, but she was identified by her name in the Guilty Plea and Sentencing Order; Doe 7217 was identified by her name in the charging information, probable cause affidavit, and Guilty Plea and Sentencing Order.

[4] Doe 6374 alleged in her complaint that in mid-June 2022, when she was 18 years old and Reibel was 53 years old, she house-sat for Reibel and discovered he had hidden cameras in his home, including cameras in the bedroom and bathroom where Reibel had told her to sleep and shower. Doe 6374 asserted that she discovered a tablet containing multiple videos of her "in various stages of undress and nudity," and she maintained that she did not consent to being videoed. Appellants' App. Vol. II at 23. Doe 6374 claimed Reibel was negligent for "[f]ailing to uphold [her] privacy," "[g]rooming" her, "[s]exually

---

[1] Cause 29D04-2402-F6-001312. While this appeal was pending, Reibel pled guilty to the count relating to Doe 6374, and the count relating to Doe 7217 was dismissed.

abusing" her, "[e]motionally abusing" her, and "[p]sychologically abusing" her. *Id.* at 23–24.

[5] Doe 7217 alleged in her complaint that in April 2021, Reibel made her an "alcoholic beverage," which she drank, and he then "engaged in non-consensual sexual contact" with her. Appellants' App. Vol. II at 27. According to Doe 7217, Reibel "recorded himself engag[ing] in non-consensual sexual contact with [her] via hidden cameras" without her consent. *Id.* Doe 7217 asserted that in 2021 when she worked for Reibel's business Beauty + Grace Carmel, LLC, Reibel "watch[ed] employees of B+G changing clothes at the B+G store." *Id.* at 28. Doe 7217 also alleged that in February 2022, she house-sat for Reibel, during which time he recorded her via hidden cameras in the bathroom and bedroom without her consent. Additionally, Doe 7217 asserted that in September 2022, Reibel told her that "he had recorded women in his home, including her." *Id.* at 28. Doe 7217 claimed that Reibel was negligent for "[a]llowing [her] privacy to be violated," "[s]exually abusing" her, "[e]motionally abusing" her, and "[p]sychologically abusing" her.[2] *Id.* at 28.

[6] The Does filed their complaints under pseudonyms without simultaneously seeking permission from the trial court to do so. In explanation, the Does'

---

[2] Doe 7217's complaint also contained allegations and claims against Reibel's business partner Amber Stanley and their business Beauty + Grace Carmel. All of Doe 7217's claims against Stanley and Beauty + Grace Carmel derive from her claims against Reibel. For example, Doe 7217 claims that Stanley and Beauty + Grace Carmel were negligent for "[f]ailing to protect [her] from" Reibel, "[f]ailing to warn of a dangerous condition on the premises created by the presence of" Reibel, and "[f]ailing to provide proper and reasonable procedures to reduce the risk of voyeurism." Appellants' App. Vol. II at 29.

complaints contained the following footnote: "Given the sensitive nature of JANE DOE's claims against the Defendant[], a confidential disclosure of JANE DOE's identity will be made to counsel for Defendants." Appellants' App. Vol. II at 22, 26.

[7] Before filing responsive pleadings, Reibel filed motions to strike the Does' complaints. Reibel contended that the Does had violated Indiana Trial Rules 10 and 17 by proceeding pseudonymously without first obtaining court permission to do so. The Does opposed Reibel's motions to strike and filed motions to proceed pseudonymously, arguing their right to privacy outweighs the "customary and constitutionally embedded presumption of open judicial proceedings," Appellants' App. Vol. II at 44, 50.

[8] After a hearing, the trial court granted Reibel's motions to strike, denied the Does' motions to use pseudonyms, and granted the Does leave to amend their complaints. Upon the Does' motions, the trial court certified its order for interlocutory appeal. We accepted jurisdiction for the Does' interlocutory appeals of that order, consolidated their cases, and this appeal ensued.[3]

---

[3] Beauty + Grace Carmel and Stanley did not file briefs in this appeal.

## Discussion and Decision

### Standard of Review

We typically review for an abuse of discretion the trial court's decisions on the Does' motions to proceed under pseudonyms and Reibel's motions to strike. *Doe v. Town of Plainfield*, 860 N.E.2d 1204, 1207 (Ind. Ct. App. 2007) (collecting cases); *Dreyer & Reinbold, Inc. v. AutoXchange.com., Inc.*, 771 N.E.2d 764, 768 (Ind. Ct. App. 2002) (citing *Cua v. Ramos*, 433 N.E.2d 745, 752 (Ind. 1982)). Because the trial court here resolved disputed facts without conducting an evidentiary hearing[4] and instead ruled on a paper record, our review is de novo. *See Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146, 1152 (Ind. 2013) (citing *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind. 2001)).

### 1. The Trial Court Did Not Err by Denying the Does' Motions to Proceed Pseudonymously

The Does assert the trial court erred by denying their motions to use pseudonyms. Article 1, Section 12 of the Indiana Constitution states that "[a]ll courts shall be open." The requirement that all courts be open leads to a presumption of openness of judicial proceedings; that is, the public should generally have access to such proceedings. In furtherance of that presumption, Trial Rule 10(G) requires that a complaint "include the names of all the parties," and Trial Rule 17(A) requires that an action "be prosecuted in the

---

[4] The trial court held a hearing on the Does' motions to proceed pseudonymously and Reibel's motions to strike, but this hearing was an oral argument and no evidence was presented.

name of the real party in interest." These rules "protect the public's legitimate interest in knowing which disputes involving which parties are before the . . . courts that are supported with tax payments and that exist ultimately to serve the American public." *Plainfield*, 860 N.E.2d at 1208 (quoting *Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 139 (S.D. Ind. 1996)). In "exceptional cases," however, a court has "the discretion to permit a party to proceed under a fictitious name." *Id.* (quoting *Ind. Black Expo*, 923 F. Supp. at 139). To that end, this court held in *Doe v. Town of Plainfield*, 860 N.E.2d 1204 (Ind. Ct. App. 2007), that a plaintiff may not file a complaint under a pseudonym unless the plaintiff can show she has "a privacy right so substantial as to outweigh the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id.* at 1208 (quoting *Ind. Black Expo*, 923 F. Supp. at 139).

[11] The *Plainfield* court held that to determine whether a plaintiff has the requisite substantial privacy right, the trial court must "carefully review all the circumstances of the given case" and "decide 'whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Plainfield*, 860 N.E.2d at 1208–09 (quoting *Ind. Black Expo*, 923 F. Supp. at 140). "Against the backdrop of the presumption in favor of public disclosure, . . . the court will review and then evaluate the nature of plaintiff's claims, his asserted need for privacy, and the defendants' interests in public disclosure of the plaintiff's name." *Id.* at 1209 (quoting *Ind. Black Expo*, 923 F. Supp. at 140). In conducting this analysis, the *Plainfield* court required the trial court to consider several factors, which may include any of the following:

(1) whether the plaintiff is challenging governmental activity; (2) whether the plaintiff would be required to disclose information of the utmost intimacy; (3) whether the plaintiff would be compelled to admit his or her intention to engage in illegal conduct, thereby risking criminal prosecution; (4) whether the plaintiff would risk suffering injury if identified; (5) whether the party defending against a suit brought under an anonym would be prejudiced; (6) whether the interests of children are at stake; (7) whether there are less drastic means of protecting legitimate interests of either the party seeking anonymity or the opposing party; (8) the extent to which the identity of the litigant has been kept confidential; and (9) the public interest in knowing the litigant's identities.

*Id.* at 1208 (citing *Ind. Black Expo*, 923 F. Supp. at 140; *Doe v. Provident Life & Acc. Ins. Co.*, 176 F.R.D. 464, 467–78 (E.D. Pa. 1997)). These factors are not exclusive and not every factor may be present in every case. *Id.* (citing *Provident Life & Acc. Ins.*, 176 F.R.D. at 468).

[12] At the trial level and in their initial briefs on appeal, the parties applied the framework crafted by the *Plainfield* court. However, given the apparent application of the Indiana Access to Court Records ("A.C.R.") Rules,[5] particularly A.C.R. Rule 6, we asked the parties to file supplemental briefing on the issue. We first determine whether the A.C.R. Rules apply to requests to

---

[5] The *Plainfield* court recognized the potential applicability of the predecessor to the A.C.R. Rules (Administrative Rule 9) but did not decide the case thereunder because the parties did not base their arguments thereon. *Doe v. Town of Plainfield*, 860 N.E.2d 1204, 1209 n.3 (Ind. Ct. App. 2007).

proceed pseudonymously. Concluding that they do, we then apply the A.C.R. Rules to this case.

### a. The A.C.R. Rules Apply to Requests to Proceed Pseudonymously

[13] The interpretation of the A.C.R. Rules is a question of law that we review de novo. *See Morrison v. Vasquez*, 124 N.E.3d 1217, 1219 (Ind. 2019) (citing *State v. Holtsclaw*, 977 N.E.2d 348, 349 (Ind. 2012)). We use the rules of statutory construction to interpret the A.C.R. Rules. *See In re P.R.*, 267 N.E.3d 1101, 1104 (Ind. Ct. App. 2025) (quoting *Coronado v. Coronado*, 243 N.E.3d 1121, 1124 (Ind. Ct. App. 2024)). In construing a rule's meaning, "our objective is to ascertain and give effect to the intent underlying the rule." *Id.* (citing *Coronado*, 243 N.E.3d at 1124). If the rule's language "is clear and unambiguous, it is not subject to judicial interpretation." *Id.* (citing *Coronado*, 243 N.E.3d at 1125). "We do not presume that the language was intended to be applied illogically or to bring about an unjust or absurd result." *Id.* (citing *Anderson v. Gaudin*, 42 N.E.3d 82, 86 (Ind. 2015)).

[14] The purposes of the A.C.R. Rules are to (1) "[c]ontribute to public safety"; (2) "[p]rotect individual Due Process rights and privacy interests"; (3) "[m]inimize the risk of injury to individuals; (4) "[p]romote accessibility to Court Records"; (5) "[p]romote governmental accountability and transparency"; (6) "[p]rotect proprietary business information"; and (7) "[m]ake the most effective use of Court and Clerk of Court staff." Ind. Access to Court Records Rule 1. The A.C.R. Rules "start[] from the presumption of open Public Access to Court Records" and are designed to "provide maximum public accessibility to Court

Records" because "denial of access could compromise the judiciary's role in society, inhibit accountability, and endanger public safety." *Id.* cmt. However, courts should keep in mind that "public policy interests . . . are not always fully compatible with unrestricted access." *Id.* To that end, the A.C.R. Rules "attempt[] to balance competing interests and recognize[] that unrestricted access to certain information in Court Records could result in an unwarranted invasion of personal privacy or unduly increase the risk of injury to individuals and businesses." *Id.*

[15] The A.C.R. Rules "appl[y] to all Court Records, regardless of the manner of creation, method of collection, form of storage, or the form in which the record is maintained." A.C.R. 4(B). A "Court Record" means (1) "any document, information, data, or other item created, collected, received, or maintained by a Court, Court agency or Clerk of Court in connection with a particular case," *id.* 3(B); and (2) "any document, information, data, or other item created, collected, received, or maintained by a Court, Court agency, or Clerk of Court pertaining to the administration of the judicial branch of government and not associated with any particular case," *id.* 3(C). *See id.* 3(A).

[16] "Information" is undefined in the A.C.R. Rules, so we give that term its plain and ordinary meaning. *See Morales v. Rust*, 228 N.E.3d 1025, 1054 (Ind. 2024) (quoting *ESPN, Inc. v. Univ. of Notre Dame Police Dept.*, 62 N.E.3d 1192, 1195 (Ind. 2016)). Generally, "information" denotes facts that have been provided or learned about a person or thing. *See Information*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/information_n?tl=true (last

visited Dec. 3, 2025); *Information*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/information (last visited Dec. 3, 2025); *Information*, CAMBRIDGE ENGLISH DICTIONARY, https://dictionary.cambridge.org/us/dictionary/english/information (last visited Dec. 3, 2025).  A person's name clearly falls within the plain meaning of "information."  And because the Does' names would have been "collected, received, or maintained" by the trial court "in connection with" this case but for their use of pseudonyms, the A.C.R. Rules govern whether or not the public may have access to the Does' names.  *Cf. In re K.H.*, 127 N.E.3d 257 (Ind. Ct. App. 2019) (applying Ind. Admin. R. 9 (the A.C.R. Rules' predecessor) to exclude from public access records of a transgender person's petition for a name and gender marker change); *In re A.L.*, 81 N.E.3d 283 (Ind. Ct. App. 2017) (same).

[17]    A.C.R. Rule 5 provides that certain types of records—such as mental health cases filed pursuant to Indiana Code article 12-26—and personal information—such as the Social Security Numbers of living persons—*must* be excluded from Public Access.  If a record or personal information is not excluded under A.C.R. Rule 5, it *may* be excluded under A.C.R. Rule 6, which allows for exclusion of a Court Record in "extraordinary circumstances."  To establish extraordinary circumstances justifying exclusion of a Court Record, the person requesting such exclusion must demonstrate

(1) "by clear and convincing evidence that any one or more of the requirements of Rule 6(A) have been satisfied," A.C.R. 6(D)(2):

    (a) "The public interest will be substantially served by prohibiting access," *id.* 6(A)(1);

    (b) "Access or dissemination of the Court Record will create a significant risk of substantial harm to the requestor, other persons or the general public," *id.* 6(A)(2); or

    (c) "A substantial prejudicial effect to on-going proceedings cannot be avoided without prohibiting Public Access," *id.* 6(A)(3), and

(2) the A.C.R. Rule 6(A) grounds for her request outweigh the Public Access interests served by the A.C.R. Rules, *id.* 6(D)(3).

If the trial court grants the request, it must use "the least restrictive means and duration when prohibiting access" to the Court Record. *Id.* 6(D)(4).

[18]    Today, we hold that a party's request to use a pseudonym—when not covered by A.C.R. Rule 5—is subject to the test provided by A.C.R. 6,[6] as articulated

---

[6] Pursuant to Indiana Access to Court Records Rule 6(A), a person requesting exclusion of a Court Record from public access must file a *verified* request therefor. The Does' requests to proceed pseudonymously were not verified filings, but no court had yet held that requests to proceed pseudonymously are governed by the A.C.R. Rules, so our decision does not turn on the Does' failure to do something they did not yet know they needed to do. *Cf. Pierce v. State*, 29 N.E.3d 1258, 1267 (Ind. 2015) (quoting *Roberts v. Cmty. Hosps. of Ind., Inc.*, 897 N.E.2d 458, 469 (Ind. 2008)) (noting well-established preference for deciding cases on their merits). We also observe that best practice for filing a complaint pseudonymously would be to file the complaint simultaneously with the requisite A.C.R. Rule 5 notice or A.C.R. Rule 6 verified written request.

above. Although we decline to follow the framework set forth in *Plainfield*, 860 N.E.2d at 1208–09, we still look to that case for guidance on this issue, particularly considering that the factors used by the *Plainfield* court clearly align with the A.C.R. Rule 6 test. *See Minges v. State*, 192 N.E.3d 893, 899 (Ind. 2022) (declining to follow case law when trial rule provided appropriate framework for analyzing issue). With all this in mind, we now turn to the merits of the case before us.

### b. *The Does Have Not Shown that Their Names Should Be Excluded from Public Access*

### i. A.C.R. Rule 5

[19] The Does assert that their names must be excluded from public access under A.C.R. Rule 5(B)(2), which provides for exclusion when required by statute. The Does maintain their names are confidential pursuant to Indiana Code section 35-40-5-12 because of Reibel's criminal case. Under that statute, a person's name must be omitted from publicly accessible court documents if the person is (1) a victim of a sex crime under Indiana Code chapter 35-42-4, or (2) a child victim of a crime of violence (as defined in Indiana Code section 35-50-1-2). Ind. Code § 35-40-5-12(a). First and foremost, this is not a criminal case, so Indiana Code section 35-40-5-12 does not apply. Even if it could apply in a civil case, it could not apply in this one. Reibel was charged with voyeurism—one count for each of the Does—under Indiana Code section 35-45-4-5. Voyeurism is not included in Indiana Code chapter 35-42-4, so neither of the Does are a victim of a sex crime under that chapter. Nor are the Does child

victims of a crime of violence. Because no provision of Indiana Code section 35-40-5-12 applies to either of the Does, their names are not confidential thereunder.[7] Accordingly, the Does' names are not automatically excluded from public access pursuant to A.C.R. Rule 5(B)(2).

### ii. A.C.R. Rule 6

[20] The Does also argue their names should be excluded from public access due to extraordinary circumstances under A.C.R. Rule 6. In particular, the Does contend that the public interest will be substantially served by prohibiting access to their names, that access or dissemination of their names will create a significant risk of substantial harm to them, and those grounds for their requests outweigh the public access interests served by the A.C.R. Rules. We address each contention in turn.

[21] **Public Interest.** The Does assert that the public interest will be served by excluding their names from public access because they are victims of crime and allowing them to use pseudonyms "support[s] their effort[s] to place accountability for their economic loss and personal injury upon the person(s) responsible for it through the civil justice system." Appellants' Supp. Br. at 7. In support, the Does cite to the United States District Court for the Northern District of Illinois's decision in *Kane v. Loyola Univ. of Chicago*, 2024 WL

---

[7] As aforementioned, Doe 7217's name was not redacted from any of the filings in the criminal case against Reibel, and Doe 6374's name was not redacted from the Guilty Plea and Sentencing Order.

4907100, No. 22 CV 6476 (N.D. Ill. Sept. 3, 2024). The plaintiffs in *Kane* were all students at Loyola University and victims of sexual assault or domestic violence; in suing Loyola for its alleged indifference to on-campus sexual assault, the plaintiffs sought to use pseudonyms. *Id.* at *1. The Northern District of Illinois granted the plaintiffs' motion to proceed pseudonymously, reasoning in relevant part as follows:

> Courts often extend the protection of anonymity to victims of sex crime on the grounds that such individuals are especially vulnerable. Unlike a litigant who objects to disclosure of their own immoral or irresponsible conduct, a victim of sexual assault has no choice in the harm they suffer. Pseudonymity also prevents a chilling effect that would deter similarly situated plaintiffs from bringing future lawsuits. The public has a strong interest in protecting the identities of sexual assault victims so that other victims will feel more comfortable suing to vindicate their rights.

*Id.* at *2 (alteration, internal citations, footnote, and quotation marks omitted).

[22] In the criminal context, the Indiana General Assembly has chosen to not protect the identities of voyeurism victims in the same way it has chosen to protect the identities of sex crime victims. *See* I.C. § 35-40-5-12(a). And although voyeurism victims also do not have a choice in the harm they suffer, that is true of almost all victims of crime. Furthermore, the Indiana General Assembly has chosen to not categorize voyeurism as a sex crime. *See id.* (defining "sex crime" as any offense found in under I.C. 35-42-4); *id.* §§ 35-42-4-1 to -14 (voyeurism not included); *id.* § 35-37-4-4 (providing protections for

victims of sex offenses listed in I.C. § 11-8-8-4.5(a)); *id.* § 11-8-8-4.5(a) (defining "sex offender" as a person convicted of particular offenses; voyeurism not included); *id.* § 16-21-8-1 (defining "sex crimes" for emergency services purposes; voyeurism not included). Indiana law thus bestows fewer protections on victims of voyeurism than it does on victims of sex crimes.

[23] In the civil context, crime victims have even fewer protections, as Indiana Code section 35-40-5-12(a) does not apply to civil cases. Doe 6374's lawsuit is premised entirely on Reibel's voyeurism. Without more, we cannot say that Doe 6374 established by clear and convincing evidence that the public interest will be *substantially* served by prohibiting access to her name. Doe 7217's lawsuit is premised in large part on Reibel's voyeurism, but she also alleges that she was the victim of "non-consensual sexual contact," Appellants' App. Vol. II at 27. Although Indiana Code section 35-40-5-12(a) does not apply here, the public undoubtedly has a strong interest in protecting Doe 7217's identity so that other victims of sex crime will feel more comfortable suing to vindicate their rights. Therefore, this factor does weigh toward prohibiting public access to Doe 7217's name.

[24] **Significant Risk of Substantial Harm.** The Does maintain that having their names disclosed presents a significant risk of substantial harm because "intimate details of their bodies and their actions in private moments—that were captured illegally—[will be] linked to them in the public record for the rest of their lives." Appellants' Supp. Br. at 6; *see also* Appellants' Am. Br. at 20. According to the Does, "[s]uch violations go beyond mere embarrassment or

humiliation." Appellants' Am. Br. at 20. At the trial level, the Does argued that they have "suffered unnecessarily, and identifying [them] and publicly tying [them] to these events would cause additional and unnecessary harm." Appellants' App. Vol. II at 46, 52.

[25] At no point at the trial level or on appeal do the Does identify what this "additional and unnecessary harm" would be. It is not clear that the use of Doe 7217's name in the civil suit creates a significant risk of substantial harm—her name is already linked to some of the intimate details of her body and her private actions because her name was not redacted from any of the publicly available filings in the criminal case against Reibel. Doe 6374's name was redacted from most of the publicly available filings in Reibel's criminal case—her name was disclosed in the Guilty Plea and Sentencing Order—but she, too, fails to elucidate how further disclosure of her name creates a significant risk of substantial harm. Additionally, and worthy of note, the rule does not suggest exclusion is proper if there's a "risk of harm"; instead, it requires the risk be "significant" and the harm be "substantial." It is the Does' burden to establish not simply a risk of harm, but a *significant* risk of *substantial* harm. On this record, we cannot say the Does have demonstrated by clear and convincing evidence that dissemination of their names will create a significant risk of substantial harm to themselves, other people, or the general public.

[26] **On Balance.** The Does' asserted reasons for prohibiting public access to their names do not outweigh the public access interests served by the A.C.R. Rules. The Does contend they should be allowed to use pseudonyms because their

"status as victims of Reibel's crimes is the entire basis for their use of the public courts." Appellants' Am. Br. at 19 (emphasis omitted).

[27] In weighing the Does' bases for exclusion against public access interests, the United States District Court for the Southern District of Indiana's decision in *Doe v. Indiana Black Expo, Inc.* is instructive. There, a plaintiff brought private claims, primarily for money damages, against a former employer for alleged harassment, a hostile work environment, and civil rights violations, among other claims. 923 F. Supp. at 140–41. The Southern District of Indiana determined that "allowing this plaintiff to proceed under a fictitious name in this case would not be fair or appropriate" and the "reasons for adhering to the customary practice of identifying the parties are powerful in this case." *Id.* In reaching this conclusion, the District Court stated in relevant part as follows:

> To begin with, these are private claims, primarily for damages, that the plaintiff himself has chosen to bring to this court. Unlike, for example, the victim in a criminal case, he has not been caught up unwillingly in litigation in public courts but has instead chosen to initiate this action. Nor does plaintiff claim that he is an unwilling victim of unlawful action by a government. The fact that these are damages claims against private parties is not necessarily decisive in and of itself, but it takes this case outside the categories of cases in which courts have most often been willing to allow use of fictitious names.

923 F. Supp. at 141. The Does argue they are victims in a criminal case, and their civil lawsuits against Reibel are an extension of his criminal conduct such that they are merely unwilling participants in litigation. We cannot agree.

[28] Although they may be crime victims, the Does have chosen to bring their private claims, which are primarily for damages, to court. *See Ind. Black Expo*, 923 F. Supp. at 141. In those private claims, the Does directly accuse Reibel of several forms of serious and deliberate wrongdoing, and the Does attack Reibel's integrity and reputation. *See id.* Because the Does have made their accusations publicly, basic fairness requires that the Does stand behind those accusations and that Reibel be able to defend himself publicly. *See id.* at 141–42 (collecting cases). Reibel has a powerful interest in being able to respond publicly to defend himself, not only in court but also in other situations where the Does' claims may be of interest to those with whom Reibel has business or other dealings. *See id.* at 142.

[29] Additionally, the Does "ha[ve] raised claims in which the parties' testimony is virtually certain to be at odds on material matters" such that "their credibility will be directly at issue." *Id.* Part of Reibel's defense will likely include direct challenges to the Does' credibility, which may well be affected by the facts the Does prefer to keep secret—details of their bodies and private actions.[8] *See id.* While these may be sensitive subjects that the Does reasonably want to keep

---

[8] We also note that some of the material that likely gives the Does the most cause for concern should it be made public may qualify for exclusion under other provisions of the A.C.R. Rules. For instance, A.C.R. Rule 5(B)(11) and (12) may be applicable for excluding exhibits portraying a person's "uncovered genitals" or "sexual conduct," respectively. This opinion should in no way be read to foreclose the possibility of excluding from public access anything other than the Does' names.

out of the public eye, they are also at the heart of the Does' credibility in making the serious accusations they have made here. *See id.*

[30] Based on the facts of this case, we cannot say that the grounds the Does have asserted for excluding their names from public access outweigh the public access interests served by the A.C.R. Rules. The Does chose to rely on blanket, unsupported assertions of harm. Such bare assertions are not the extraordinary circumstances contemplated by A.C.R. Rule 6. And both the Does' names were accessible through Reibel's criminal case, thereby diminishing the weight of their interests in prohibiting public access to their names in their civil cases. We therefore cannot say the trial court erred by denying their motions to proceed pseudonymously.

## 2. The Trial Court Did Not Err by Granting Reibel's Motions to Strike

[31] The Does contend the trial court erred by granting Reibel's Trial Rule 12(F) motions to strike their complaints. Trial Rule 12(F) provides that upon a party's motion, a trial court "may order stricken from any pleading any insufficient claim or defense or any redundant, immaterial, impertinent, or scandalous matter." Based on our conclusion that the trial court did not abuse its discretion by denying the Does' motions to use pseudonyms—that is, the Does must sue Reibel in their own names—we must also conclude that the trial court did not abuse its discretion by granting Reibel's motions to strike.

## Conclusion

In sum, the trial court did not err by denying the Does' motions to proceed anonymously or by granting Reibel's motions to strike their complaints. In reaching these conclusions, we are not unmindful of or insensitive to the Does' desire to shield from the public eye the intimate details of their persons and private actions that will likely be divulged as litigation continues in this case. But on this record, the Does' desire alone does not overcome the presumption of openness enshrined in our constitution and built into the A.C.R. Rules. Accordingly, we affirm the trial court on all issues raised.

Affirmed.

Foley, J., and Scheele, J., concur.

ATTORNEY FOR APPELLANTS

Ashley N. Hadler
Garau Germano, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE – KRISTAN REIBEL

Christopher P. Jeter
Alexandra M. Dowers
Massillamany Jeter & Carson LLP
Fishers, Indiana