**James DOE, a fictitious name, Plaintiff,**

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Defendant.**

**Civil Action No. 96–5557.**

United States District Court, E.D. Pennsylvania.

Jan. 9, 1997.

Mark W. Tanner, Annemarie Martin, Ominsky, Messa, Tanner, Giles and Sheridan, Philadelphia, PA, for Plaintiff.

Richard L. McMonigle, Jr., Sara J. Thomson, McKissock & Hoffman, P.C., Philadelphia, PA, for Defendant.

## *MEMORANDUM*

NEWCOMER, District Judge.

Presently before this Court is plaintiff's Motion for Permission to Proceed in Pseudonym and for Protective Order, and defendant's response thereto. For the following reasons, this Court grants said Motion.

### I. *Background*

This action arises out of plaintiff's claim of entitlement to total disability benefits under a disability income insurance policy issued by defendant. Plaintiff was the named insured under an "own occupation, non–cancelable" disability insurance policy issued by the defendant. The policy of disability insurance provided by the defendant defines total disability due to an injury or sickness as occurring when the insured is not able to perform the substantial and material duties of his occupation, and the insured is receiving care by a physician which is appropriate for the condition causing the disability.

Plaintiff's occupation was that of an employee benefits and insurance broker, having worked full time in that capacity since May 1985. In the fall of 1993, plaintiff allegedly became unable to perform the duties of his occupation because he was diagnosed as suffering from a number of psychiatric disorders, including a general anxiety disorder, dysthymic disorder, adult attention deficit disorder, personality disorder, immature, inadequate, passive aggressiveness, and occupational stress with previous job situation.

Plaintiff has undergone and continues to undergo treatment for his illnesses with various professional healthcare providers, and experiences many forms of treatment, including medication and psychotherapy. Because of said illnesses, plaintiff was unable to continue in his capacity as an employee benefits and insurance broker, and in June 1994, plaintiff made a claim with defendant under the terms of their policy for disability benefits, retroactive to October 1, 1993. In December 1994, defendant paid plaintiff back benefits which were owing to him. From December 1994 to May 1996, defendant paid plaintiff the monthly benefits under the terms of the disability insurance policy. In

May 1996, defendant unilaterally terminated plaintiff's monthly benefits.

In response, plaintiff commenced the instant action. Plaintiff filed his Complaint under the pseudonym of James Doe. Subsequently, Defendant moved, *inter alia*, to strike plaintiff's Complaint for failure to comply with Rule 10(a) which requires that a complaint contain the names of all parties. In the alternative, defendant sought to have this Court order plaintiff to file a motion for this Court to use a pseudonym. By order dated October 11, 1996, this Court directed plaintiff to file a motion requesting permission to proceed in pseudonym. Subsequently, plaintiff filed the present Motion. Plaintiff contends that this Court should grant said motion because the public and private interests in allowing him to proceed in pseudonym outweigh the public interest in public access to his true identity. In response, defendant argues that such motion should be denied because (1) plaintiff has not established a substantial basis for proceeding in pseudonym and (2) the scope of relief sought would unreasonably prejudice defendant's ability to defend itself in this litigation. Because the public and private interests in allowing plaintiff to proceed in pseudonym outweigh the public interest in public access to the true identity of plaintiff, I grant plaintiff's Motion.

## II. Discussion

### A. A Litigant's Right to Use a Pseudonym

As an initial matter, I note that nowhere in the Federal Rules of Civil Procedure is pseudonymous litigation authorized. Admittedly, Rule 10(a) provides that "[i]n the complaint the title of the action shall include the names of all the parties." Fed.R.Civ.P. 10(a). Further, Rule 3 requires the complaint to be filed with the court in order to commence a civil action. Additionally, Rule 5(d) provides that subsequent papers that are required to be served on a party must also be filed with court unless the court orders otherwise. Based on these Rules,

some courts have denied requests to proceed in pseudonym, finding that the Rules do not authorize such a practice. *See, e.g., Roe v. New York,* 49 F.R.D. 279, 281 (S.D.N.Y. 1970).

■ Despite the holdings of these rare cases, this Court finds that a party to a civil action—either defendant or plaintiff—may use a pseudonym when the circumstances of the case justify such use. Indeed, the overwhelming majority of jurisdictions to consider this question have determined that parties may proceed in pseudonym under particular circumstances. *See, e.g., Coe v. United States Dist. Court for Dist. Colo.,* 676 F.2d 411, 414 (10th Cir.1982). Federal courts have long approved the practice of pseudonymous litigation. The most famous example of pseudonymous litigation is *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). In *Roe,* this Court finds the Supreme Court's implicit recognition of this practice. Further, nothing in the Rules or the Advisory Committee Notes to the Rules indicates that the drafters were attempting to promulgate a rule that neither a civil defendant nor civil plaintiff ever could proceed in pseudonym. Therefore, this Court concludes that a party to a civil action—whether defendant or plaintiff—may proceed in pseudonym when the particular circumstances of the case justify such pseudonymity. The question posited at this point is what circumstances can justify the use of a pseudonym by a party to a civil action.

■ Many courts have attempted to articulate a standard for determining the propriety of pseudonymous litigation. A review of the case law indicates that courts which have addressed this issue have formulated various standards, albeit dissimilar, through which the competing interests at stake have been weighed to determine whether a party should be permitted to proceed in pseudonym. *See, e.g., Doe v. Stegall,* 653 F.2d 180 (5th Cir. Unit A Aug. 1981). This Court recognizes the strong public interest militating against pseudonymity—the public right of access to civil judicial records [1] and proceedings. The

---

1. The right of access to judicial records is beyond dispute in the Third Circuit. *Glenmede Trust Co.*

*v. Thompson,* 56 F.3d 476, 487 (3d Cir.1995).

public right of access to civil judicial proceedings has as its bases, constitutional law,[2] the common-law [3] and public policy grounds.[4] The public's right to know the true identity of the parties is concomitant with the right of public access to judicial proceedings and records. *Stegall,* 653 F.2d at 180. In contrast to these public interests, there exists private and public interests that favor the use of pseudonyms in litigation. For example, litigants may have a strong interest in protecting their privacy or avoiding physical harm. 2A James Moore, *Moore's Federal Practice* ¶ 10.02 (1995). Further, the public may have a strong interest in protecting the privacy of plaintiffs in controversial cases so that these plaintiffs are not discouraged from asserting their claims. It is these competing interests, in addition to others not mentioned herein, that courts have attempted to balance in determining whether a party should be permitted to proceed in pseudonym.

■ Notably, the Third Circuit has not articulated a standard for determining whether a party should be allowed to proceed in pseudonym. Thus, this Court adopts a standard which it believes will properly balance the strong interest in ensuring public access to civil judicial proceedings and records against the private and public interests favoring the use of pseudonyms. Under this standard, "[t]he public's ... right of access should prevail unless [the party requesting pseudonymity] demonstrates ... that his interests in privacy or security justify pseudonymity." Steinman, *supra,* at 37.[5] In determining whether a party has satisfied this standard, the Court should weigh the private and public interests favoring pseudonymous litigation against the public interest in knowing the true identity of the parties. Steinman, *supra,* at 38–42.

■ The factors which support the use of pseudonymous litigation are as follows: (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the

2. In *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion), the Supreme Court held that the First Amendment guarantees the public and press a right to attend criminal trials. Although this finding was limited to criminal trials, the Court stated that "historically both civil and criminal trials have been presumptively open." 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17. *Justice Stewart, in concurrence, expressly opined* that the First Amendment clearly gives the public a right of access to civil trials. Although I do not expressly rule on this issue, I find that the reasons which support a First Amendment right of access to criminal proceedings also seem to support a First Amendment right of access to civil proceedings.

3. The Supreme Court has recognized the historical existence of a common–law rule of open civil proceedings. *Gannett Co. v. DePasquale,* 443 U.S. 368, 386 n. 15, 99 S.Ct. 2898, 2909 n. 15, 61 L.Ed.2d 608 (1979). Indeed, the deep history of Anglo–American law supports the proposition that both civil and criminal trials shall be open to the public. For example, the 1677 New Jersey Constitution provided that any person could attend a trial whether it was "civil or criminal." *Id.* In *Richmond,* Justice Brennan, in concurrence, noted that "the case for a right to access has special force when drawn from an enduring and vital tradition or public entree to particular proceedings or information...." 448 U.S. at 589, 100 S.Ct. at 2834 (Brennan, J., concurring).

Indisputably, the common–law supports the proposition that civil trials should be open to the public.

4. These non–exclusive public policy grounds include: the preservation of public respect for the judicial system; the promotion of fair proceedings; the preservation of public scrutiny which protects against judicial abuse; and the therapeutic value for the community. Joan Steinman, *Public Trial, Pseudonymous Parties: When Should Litigants Be Permitted to Keep Their Identities Confidential?,* 37 Hastings L.J. 1, 13–18 (1985).

5. In her article, Steinman argues that two different standards should apply in determining the propriety of pseudonymous litigation. Steinman argues that a lower standard should apply to the earlier stages of litigation and a higher standard to the later stages. Steinman reaches this conclusion based on her finding that the public has very little interest in the names of the parties during the early stages of litigation. However, I disagree with Steinman's assessment of the public's interest in litigation during the early stages of litigation. Indeed, the public may have a strong interest in knowing the true identity of the parties at an earlier stage in litigation, depending on who are the parties involved. Thus, I find that no reasons exist that would require this Court to create two different standards for determining the propriety of pseudonymous litigation.

litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives. Steinman, *supra*, at 38–41.

■ On the other side of the scale, the factors which militate against the use of a pseudonym are as follows: (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated. Steinman, *supra*, at 41–42. The factors, in favor of and against pseudonymity, listed above are not meant to comprise an inclusive list of factors to be exclusively considered when determining the propriety of pseudonymous litigation. Indeed, trial courts will always be required to consider those factors which the facts of the particular case implicate. Nonetheless, I note that most cases involving pseudonymity will implicate the factors listed herein.

■ Applying these factors to the instant case, this Court concludes that plaintiff's use of a pseudonym is justified. First, Doe took steps from the beginning of this case to maintain anonymity. Before Doe commenced the case, he requested confidentiality from defendant. Further, Doe has only revealed to his immediate family, medical providers and his counsel that he is suffering from mental illnesses which have allegedly disabled him. Second, Doe fears that if others, such as his friends and business associates, learn of his psychiatric problems he will be stigmatized in the community. Doe's fear is not unfounded. Unfortunately, in our society, there is a significant stigma associated with being identified as suffering from a mental illness. Moreover, in this case, there is a great risk that plaintiff will be stigmatized in his professional life. Plaintiff, as an employee benefits and insurance broker, dealt with attorneys on a regular basis. There is a strong possibility that some of these attorneys will follow this case in legal publications with the result being that plaintiff's professional reputation will be permanently damaged.

Third, there is substantial public interest in maintaining the confidentiality of plaintiff's name. To start, the public has an interest in preventing the stigmatization of litigants with mental illnesses. Further, plaintiff's identity should be protected in order to avoid deterring people with mental illnesses from suing to vindicate their rights. In this case, plaintiff alleges that defendant unilaterally terminated his monthly benefits owing under his disability income insurance policy after improperly concluding that plaintiff's mental illnesses did not render him disabled under the terms of the insurance policy. Plaintiff maintains that defendant terminated these benefits in bad faith. Under the facts of this case, this Court finds that the public has a strong interest in protecting plaintiff's identity. A ruling by this Court, denying plaintiff the use of a pseudonym, may deter other people who are suffering from mental illnesses from suing in order to vindicate their rights, merely because they fear that they will be stigmatized in their community if they are forced to bring suit under their true identity. Indeed, unscrupulous insurance companies may be encouraged to deny valid claims with the expectation that these individuals will not pursue their rights in court. Consequently, this factor weighs in favor of allowing plaintiff to proceed in pseudonym.

Fourth, although the issues in the Amended Complaint may be of some interest to the public, Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings. Indeed, this Court intends to keep the proceeding open to the public while still maintaining the confidentiality of plaintiff's identity. Fifth, an outcome adverse to plaintiff merely attributable to his refusal to pursue the case so as to avoid being publicly identified is highly undesirable. There exists a possibility that plaintiff

may fail to pursue his claim because of potential stigmatization from the community and damage to his professional reputation. This result would be undesirable because the state and/or federal government may be required to support the defendant financially through its welfare programs, despite the fact that defendant may be liable to plaintiff for monthly benefit payments under the terms of the insurance policy upon which plaintiff paid premium payments.[6] If plaintiff's claim proves to be meritorious, then defendant will be required to resume paying plaintiff monthly benefits under the disability income insurance policy. Therefore, the public has an interest in having plaintiff assert a claim which is potentially meritorious.

Sixth, this Court finds that Doe has no illegal or ulterior motive for pursuing his claim against defendant anonymously. Defendant argues that plaintiff submits his "application for pseudonymity ... to obtain a perceived tactical advantage rather than to express James Doe's personal thoughts and concerns over his identity becoming known." (Def.'s Mem. Law Opp'n Pl's Mot. Proceed Pseudonym at 5). However, defendant offers no evidence that plaintiff possesses an ulterior motive to gain a tactical advantage over it. Indeed, plaintiff has provided this Court with several valid reasons in support of his request to proceed in pseudonym. Further, the Court finds that plaintiff has not sought pseudonymity to impair defendant's ability to defend himself, to delay the litigation or to increase the costs to defendant.

The only factor which militates against the use of a pseudonym by plaintiff is the general public interest in access to the public identities of litigants. However, this general public interest, which exists in all civil actions, does not outweigh the above–mentioned factors which all tip in favor of plaintiff's use of a pseudonym. Additionally, a public figure is not involved in this case, and thus the public interest involved here is not stronger than the public interest that normally obtains in a civil action. Further, defendant has not demonstrated that its right to conduct discovery will be hampered by plaintiff proceeding in pseudonym.[7] Thus, because the public and private interests in allowing plaintiff to proceed in pseudonym outweigh the public interest in public access to the true identity of plaintiff, I grant plaintiff's Motion.

### B. Rule 26(c) Protective Order

█ Under Rule 26(c), the Court has the power to enter a protective order upon a demonstration of "good cause" in order to protect a party from annoyance, embarrassment, oppression or undue burden or expense. *Glenmede*, 56 F.3d 476. "Good cause" is established when it is specifically demonstrated that disclosure will cause a defined and serious injury. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir.1994). The party requesting the protective order must demonstrate this defined and serious injury by substantiated specific examples.

█ In considering whether "good cause" exists for a protective order, trial courts are required to apply a standard which balances the private and public interests implicated by the facts of the particular case at bar. *Id.* at 787–89. The Third Circuit, in *Pansy*, enumerated several factors, which are neither mandatory nor exhaustive, that may be considered in evaluating whether "good cause" exists. Only some of the factors, set forth in *Pansy*, are relevant in determining the propriety of pseudonymous litigation. For example, these factors would be relevant: (1) whether disclosure will violate any privacy interests; (2) whether disclosure of the information will cause a party embarrassment; (3) whether a party benefitting from the order of confidentiality is a public entity or official; and (4) whether the case involves issues important to the public. *Id.* at 787–88. Factors which militate against the entry of a

---

6. Plaintiff maintains that he has lost virtually all means of economic support except for the monthly benefits he was receiving from defendant. Thus, if plaintiff permanently loses his benefits under the terms of his insurance policy, there exists the possibility that plaintiff will be forced to join the welfare roles.

7. The protective order that is entered today to effectuate plaintiff's right to proceed in pseudonym also protects defendant's right to conduct discovery without any prejudice.

protective order under the facts of this case are whether defendant is prejudiced in its ability to prepare its case and whether the public interest is harmed by the entry of the protective order. Finally, this Court is directed to "evaluate [these] competing considerations in light of the facts of the individual case[ ]." *Id.*

■ Applying this standard to the facts of this case, I find that a protective order should be entered in order to enable plaintiff to proceed in pseudonym. Plaintiff has proven that there is a strong probability that he will be stigmatized in the community if his name is revealed. Additionally, plaintiff may also suffer irreparable harm to his professional reputation if he is ordered to proceed under his true name. Plaintiff thus has demonstrated that disclosure of his true identity would expose him to a defined and specific injury; therefore, he has demonstrated "good cause."

In contrast, there exist no factors that militate against the entry of a protective order in this case. Defendant has not demonstrated that its ability to prepare its case will be prejudiced by the entry of a protective order that maintains plaintiff's anonymity. The protective order, which this Court enters today, protects defendant's right to conduct discovery without being unduly limited in this pursuit. Under the protective order, defendant has full access to all individuals who are potentially necessary in order to fully prepare its defense. Moreover, it is worthy to note that defendant has already gained access to or obtained much of the information that is necessary to prepare its defense. Finally, defendant's right to petition this Court in order to fully protect and exercise its discovery rights is not limited in any manner. Therefore, since I find that plaintiff has demonstrated that "good cause" exists for a protective order and that the private and public interests implicated herein do not militate against the entry of a protective order, I grant plaintiff's request for a protective order as modified by this Court.

*III. Conclusion*

Accordingly, for the foregoing reasons, I find that the public and private interests in allowing plaintiff to proceed in pseudonym outweigh the public interest in public access to the true identity of plaintiff under the particular facts of this case. Therefore, I grant plaintiff's motion for permission to proceed in pseudonym and for a protective order as modified by this Court.

An appropriate order follows.

### *ORDER*

AND NOW, this day of January, 1997, upon consideration of plaintiff's Motion for Permission to Proceed in Pseudonym and for Protective Order, and defendant's response, it is hereby ORDERED that said Motion is GRANTED. IT IS FURTHER ORDERED that:

(1) Plaintiff is allowed to proceed in pseudonym and the docket shall continue to reflect plaintiff's name as James Doe.

(2) Plaintiff will be referred to as James Doe in all depositions, pleadings and other documents related to this litigation, and the plaintiff shall be allowed to endorse documents related to this litigation using the pseudonym, James Doe.

(3) The identity of James Doe and his address shall be available to the attorneys of record and in-house counsel for the defendants, who shall not disclose or permit disclosure thereof, except to the following persons;

(a) Their law partners, associates and persons employed in the law offices of such attorneys, and other in-house counsel;

(b) The employees of defendant who have knowledge of the facts alleged in the Amended Complaint;

(c) *Bona Fide* outside experts and their employees, not on the staff of any party, consulted by such attorneys in the prosecution or defense of the claims herein;

(d) A person whose deposition is to be taken in this action, but only to the extent necessary for the deposition; and

(e) Any person who potentially possesses information that is relevant to plaintiff's claims or defendant's defense.

(4) Each person to whom the identity of James Doe is to be disclosed pursuant to this Order, shall agree in advance:

(a) That he or she will not disclose the identity of James Doe to any person not entitled to know his identity under this Order; and

(b) That he or she will not use the identity of James Doe except in connection with the prosecution or defense of the claims herein.

(5) In the event defendant believes it is necessary in the defense of the claims herein for it to disclose the identity of James Doe to persons other than those specified in this Order, defendant shall communicate with plaintiff's counsel and if agreement cannot be reached in writing, the matter shall be determined by the Court.

(6) Attendance at any part of any deposition of which the identity of James Doe is disclosed shall be limited to those to whom disclosure of such information can be made pursuant to this Order, and only after they have complied with the terms of this Order.

(7) In all proceedings held before this Court, including trial, all counsel, witnesses and court personnel present shall refer to plaintiff by his pseudonym, James Doe.

(8) In all proceedings held before this Court, including trial, plaintiff's photograph shall not be taken by members of the media and plaintiff's picture shall not be drawn by the courtroom artists.

(9) The terms of this Order shall remain in effect until further Order of this Court.

AND IT IS SO ORDERED.